USDC SCAN INDEX SHEET

















JOEH     4/26/06     12:28

3:04-CV-01237   DAVIS V. SAFECO INSURANCE CO

*122*

*TRLBR.*

1  Raymond H. Goettsch (Bar No. 105441)
   Andres C. Hurwitz (Bar No. 150443)
2  **DEMLER, ARMSTRONG & ROWLAND, LLP**
   4500 E. Pacific Coast Highway, Fourth Floor
3  Long Beach, California 90804-3298
   Telephone: (562) 597-0029
4  Fax: (562) 494-3958; CD Fax: (562) 597-5381

5  Attorneys for defendant Safeco Insurance
   Company of America, a Washington corporation ·
6

7

8                 UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

                                              **BY FAX**
10

11  CYNTHIA DAVIS and DANIEL DAVIS  )  NO.  04 CV 1237-BEN (NLS)
                                     )
12             Plaintiffs,           )  Hon. Roger T. Benitez
                                     )  Courtroom: 3
13       vs.                         )
                                     )  **DEFENDANT SAFECO INSURANCE**
14  SAFECO INSURANCE COMPANY OF      )  **COMPANY OF AMERICA'S TRIAL BRIEF**
    AMEICA, a Washington corporation; and )
15  DOES 1 through 100, inclusive,   )
                                     )  Trial Date:     May 2, 2006
16             Defendants.           )  Time:           9:30 a.m.
                                     )
17                                   )  Complaint Filed:      June 18, 2004
                                     )  Pre-Trial Conference: March 6, 2006
18

19
        Defendant Safeco Insurance Company of America ("Safeco"), a Washington corporation,
20
    submits the following trial brief.
21
    / / /
22
    / / /
23

24

25

26

27

28

    S7\BR\BRIEFS\TRBF01

ORIGINAL

1

## TABLE OF CONTENTS

2
Page

1.   INTRODUCTION ........................................................................................................................ 1

2.   FACTUAL SUMMARY ................................................................................................................ 2

3.   SAFECO HAD NO DUTY TO DEFEND THE DAVISES BECAUSE THE COMPLAINT
     IN THE ENGEBRETSEN LAWSUIT DID NOT ALLEGE PLUMBING-RELATED DAMAGES ................ 3

4.   EVEN ASSUMING THAT A DEFENSE DUTY INITIALLY EXISTED, THAT DUTY ENDED WHEN
     THE ENGEBRETSENS RELEASED ANY CLAIMS ARISING OUT OF APEX PLUMBING'S WORK ..... 4

5.   FEES AND COSTS INCURRED AFTER THE ENGEBRETSEN/APEX PLUMBING SETTLEMENT
     ARE NOT RECOVERABLE ........................................................................................................... 5

6.   SAFECO HAD NO DUTY TO INDEMNIFY THE DAVISES FOR THE JUDGMENT AGAINST
     THEM IN THE ENGEBRETSEN ACTION ....................................................................................... 6

7.   PLAINTIFFS' INDEMNITY CLAIM IS LIMITED TO $250,000 ....................................................... 7

8.   PLAINTIFFS' BAD FAITH CLAIM HAS NO MERIT ...................................................................... 7

9.   THERE IS NO CONDUCT SUPPORTING A CLAIM FOR BAD FAITH ............................................. 8

     A.   THE GENUINE DISPUTE DOCTRINE ................................................................................. 8

     B.   SPECIFIC FACTS OF GENUINE DISPUTE ........................................................................ 10

10.  DAMAGES SOUGHT BY PLAINTIFFS ....................................................................................... 10

     A.   STUDENT LOANS ......................................................................................................... 10

     B.   BRANDT FEES ............................................................................................................ 11

     C.   MONEY BORROWED TO PURCHASE NEW PROPERTY .................................................... 11

     D.   ALLEGED INADEQUATE DEFENSE OF THE ENGEBRETSEN ACTION ............................... 11

     E.   MISCELLANEOUS COSTS ............................................................................................. 11

     F.   EMOTIONAL DISTRESS ................................................................................................ 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRIAL BRIEF

04-25-06   02:06pm   From-Demler Armstrong   562 494 3858   T-675   P.003   F-812

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acceptance Ins. Co. v. Syufy Enterprises,*
(1999)69 Cal.App.4th 321, 81 Cal.Rptr.2d 557 ........................................................................ 3

*Brandt v. Superior Court*
(1985) 37 Cal.3d 813 ................................................................................................................ 11

*Certain Underwriters at Lloyd's v. Superior Court*
(2001) 24 Cal.4th 945, 103 Cal.Rptr.2d 672 ............................................................................ 7

*Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.*
90 Cal.App.4th 335, [108 Cal.Rptr.2d 776, 784.] ............................................................. 8, 9, 10

*Congleton v. National Union Fire Ins. Co.*
189 Cal.App.3d 51, (1987) [234 Cal.Rptr. 218, 222-223] ...................................................... 8

*Dalrymple v. United Services Auto Assn.,*
(1995) 40 Cal.App.4th 497. ...................................................................................................... 8

*Feldman v. Allstate Ins. Co.*
(9th Cir. 2003) 322 F.3d 660 .................................................................................................... 9

*Fraley v. Allstate Ins. Co.*
(2000) 81 Cal.App.4th 1282, [97 Cal.Rptr.2d 386] ............................................................. 9, 10

*Gray v. Zurich Insurance Co.,*
(1966) 65 Cal.2d 263 ................................................................................................................ 6

*Harbor Ins. Co. v. Lewis*
(E.D.Pa. 1983) 562 F.Supp. 800 .............................................................................................. 5

*Hartford Accident & Indemnity Co. v. Superior Court*
(1994) 23 Cal.App.4th 1774, 29 Cal.Rptr.2d 32 ...................................................................... 4

*Horace Mann Ins. Co. v. Barbara B.,*
4 Cal.4th 1076, 17 Cal.Rptr.2d 210 (1993) ........................................................................... 4, 6

*Love v. Fire Ins. Exchange*
(1990) 221 Cal.App.3d 1136 .................................................................................................... 7

*Maryland Cas. Co. v. Nationwide Ins. Co.*
(1998) 65 Cal.App.4th 21, 76 Cal.Rptr.2d 113 ........................................................................ 5

ST28RBRIEFS\TR8F01

*McMillin Scripps North Partnership v. Royal Ins. Co.*
(1993) 19 Cal.App.4th 1215 ...................................................................................................... 7

*Montrose Chemical Corp. v. Superior Court*
(1993) 6 Cal.4th 287 ....................................................................................................... 4, 6

*Phelps v. Provident Life and Acc. Ins. Co.*
(C.D. Cal. 1999) 60 F.Supp.2d 1014 ........................................................................... 10

*Presley Homes, Inc. v. American States Ins. Co.*
(2001) 90 Cal.App.4th 571, 108 Cal.Rptr.2d 686 ..................................................... 5, 7

*Ringler Assoc. Inc. v. Maryland Cas. Co.*
(2000) 80 Cal.App.4th 1165 ........................................................................................... 6

*Shade Foods v. Inc. v. Innovative Products Sales & Marketing, Inc.*
(2000) 78 Cal.App.4th 847, [93 Cal.Rptr.2d 364] ......................................................... 8

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.,*
(2002) 101 Cal.App.4th 1038, 124 Cal.Rptr.2d 818 ................................................... 3, 4

*Waller v. Truck Ins. Exchange, Inc.*
(1995) 11 Cal.4th 1 ........................................................................................................ 7

Other Authorities

*Croskey et al., California Practice Guide: Insurance Litigation* 7:1409 p.7E-5 (TRG 2004) ...... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

1.    **INTRODUCTION**

Safeco issued a commercial general liability insurance policy to Greg Caso doing business as Apex Plumbing ("Apex Plumbing").  After plaintiffs Dan and Cynthia Davis subcontracted with Apex Plumbing to work on a house that the Davises were building in Encinitas, Apex Plumbing obtained a certificate of insurance for the Davises, doing business as DECA Homes ("the Davises"), and an "additional insured" endorsement was issued.[1]  The Davises completed construction of the Calle Margarita property and later sold it to Rick and Kristin Engebretsen ("the Engebretsens").

The Engebretsens subsequently sued the Davises (and others) for construction defects in San Diego Superior Court in an action captioned *Engebretsen v. Davis*, San Diego Superior Court Case No. GIC782599.  The Davises undertook their own defense through Jeffrey Haile of a firm now known as Kennerson, Schwartz, Semerdjian & Haile.  After defending the *Engebretsen* action for more than a year, the Davises tendered their defense to Safeco under the Apex Plumbing policy.[2]  Safeco did not ultimately accept the tender.  Prior to trial, the Engebretsens released all claims arising out of Apex Plumbing's scope of work on the Calle Margarita property.  That settlement was determined to be in good faith.  The Engebretsens went to trial against the Davises, and they obtained a $517,529.63 judgment against the Davises.  The Engebretsens and the Davises later settled the judgment for $250,000.

In this case, the Davises contend that Safeco breached the Apex Plumbing policy and acted in bad faith by failing to defend and indemnify them in the *Engebretsen* action.  Safeco contends (1) that it did not owe the Davises for their fees and expenses incurred prior to their tender (which has already been adjudicated in Safeco's favor), (2) that, assuming that Safeco did owe them a defense, that duty ceased when the Engebretsens released claims arising out of Apex

---

[1] The "additional insured" endorsement is not found in Safeco's underwriting file, but Apex had a copy in its file.

[2] The Davises also tendered the matter to their own carrier, Farmers; that tender was denied, and Farmers prevailed on a dispositive motion in the Davises' lawsuit against it.  That matter was upheld by the California Court of Appeal, Fourth District.

1   Plumbing's scope of work, and (3) that Safeco did not owe any duty to indemnify the Davises for

2   the subject judgment. The court granted in part and denied in part motions for summary

3   judgment filed by plaintiffs and by defendant. The court determined that Safeco did not have a

4   duty to pay for the Davises' defense before they tendered the claim to Safeco. The court

5   determined that a triable issue existed regarding whether Safeco had a duty to indemnify the

6   Davises for the subject judgment. The court ruled that Safeco did have a duty to defend the

7   Davises, and that the defense extended beyond the Apex Plumbing settlement.

8          Safeco has paid $11,484.50 for the costs and fees for which supporting documentation

9   has been provided from the time of the tender on October 10, 2002 to the time that the

10  Engebretsens signed the August 25, 2003 settlement agreement. The agreement provided that the

11  Engebretsens "further agree that in addition to general release cited herein, they are specifically

12  releasing all claims from the suit arising out of the scope of work of Apex Plumbing."[3] Safeco

13  contends that as a result, there was no longer any potential duty to defend and no further defense

14  or indemnity obligations.

15  2.     **FACTUAL SUMMARY**

16         On or about November 19, 1996, Safeco renewed to Apex Plumbing a commercial

17  general liability insurance policy, policy No. SL2291744C ("the policy"), effective from

18  November 19, 1996 to November 19, 1997. The Davises were "additional insureds" under the

19  policy.[4] The "additional insured" endorsement issued by Safeco contained the following

20  language:

21         WHO IS AN INSURED (Section II) is amended to include as an insured the

22         person or organization shown in the Schedule, but only with respect to liability

23         arising out of your ongoing operations performed for that insured.

24         On or about July 27, 2001, the Engebretsens filed their complaint for construction defects

25  in the action captioned *Rick Engebretsen and Kristin Engebretsen, Plaintiffs v. Daniel Davis;*

26  *Cynthia Davis; Countywide Property Inspections; Does 1 through 250, inclusive, Defendants,*

27

---

[3] Notably, the law firm to which the bills are owed had not been pursuing payment, nor has it

28  filed a lien on this case..

[4] Initially there was some uncertainty on this issue, but that has now been clarified.

TRIAL BRIEF

04-25-06   02:06pm   From-Demler & Armstrong         562 494 3858   T-675   P.007/018   F-812

1    San Diego County Superior Court, North County Branch Case No. GIN014437 ("the

2    *Engebretsen* lawsuit"). In the Engebretsen lawsuit, the Engebretsens did not allege any plumbing-

3    related damages. On or about October 10, 2002, the Davises tendered their defense for the

4    Engebretsen lawsuit under the policy.

5         On or about August 25, 2003, on behalf of Apex Plumbing, Safeco settled the

6    *Engebretsen* lawsuit, with a provision that also protected the Davises. The settlement contained

7    a mutual general release, as well as the following specific release:

8         Plaintiffs further agree that in addition to general release cited herein, they are

9         specifically releasing all claims from the suit arising out of the scope of work of

10        Apex Plumbing.

11        Shortly thereafter, the Engebretsens obtained a $517,529.63 judgment against the Davises

12   at trial. There was no evidence presented at trial of any alleged wrongdoing by Apex Plumbing

13   since such claims had already been resolved. However, a declaration by Apex Plumbing

14   principal Mr. Caso was submitted by the Engebretsens at the Davises' request in an apparent

15   effort to assist the Davises in their coverage dispute with Farmers.

16   3.   **SAFECO HAD NO DUTY TO DEFEND THE DAVISES BECAUSE THE**

17        **COMPLAINT IN THE ENGEBRETSEN LAWSUIT DID NOT ALLEGE**

18        **PLUMBING-RELATED DAMAGES**

19        The "additional insured" endorsement covered the Davises "only with respect to liability

20   arising out of your (i.e., the named insured's) ongoing operations performed for that insured (i.e.,

21   the additional insured)." *Croskey et al., California Practice Guide: Insurance Litigation* 7:1409

22   p.7E-5 (TRG 2004) (original emphasis and parentheticals). Under this language, there must be

23   some causal connection between the named insured's work and the injury. *Acceptance Ins. Co. v.*

24   *Syufy Enterprises*, (1999)69 Cal.App.4th 321, 328-329, 81 Cal.Rptr.2d 557. "Put another way,

25   the injury-causing act must somehow be related or connected to [the named insured's]

26   performance of the work under the subcontract beyond its mere presence on the job site."

27   *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*, (2002) 101

28   Cal.App.4th 1038, 1059, 124 Cal.Rptr.2d 818 (original emphasis).

S72AA\BRIEFS\TR\BFO1                                                    3

1    According to the Davises, Apex Plumbing, Safeco's named insured, performed plumbing

2    work on the Calle Margarita residence for the Davises prior to their sale of that property to the

3    Engebretsens in May 1998. In their complaint against the Davises, the Engebretsens did not

4    allege any plumbing-related damages. Rather, the property damage they alleged was for failed

5    surface and subsurface drainage; improper grading and soils preparation; poorly designed and

6    constructed concrete systems; cracking of walls, tile, and flooring; inadequate crawlspace

7    ventilation; improper design and installation of landscape irrigation; shoddy construction and

8    waterproofing of exterior walls; and poor placement of soils and hardscape. None of these

9    implicates the plumbing work done by Apex Plumbing.

10    "The determination whether the insurer owes a duty to defend usually is made in the first

11    instance by comparing the allegations of the complaint with the terms of the policy." *Horace*

12    *Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210 (1993). The

13    Engebretsens' complaint did not allege any plumbing-related damage. Rather, their complaint

14    generally alleged that improper grading and drainage, coupled with unsuitable ventilation,

15    promoted water damage to the residence. Such are not plumbing-related damages, and nothing in

16    the complaint reveals any connection between the plumbing work done by Apex Plumbing and

17    the claimed injuries. As noted above, some causal connection beyond the named insured's

18    presence at the job site is required to establish a potential for coverage. *St. Paul Fire and Marine*

19    *Ins. Co. v. American Dynasty Surplus Lines Ins. Co., supra,* 101 Cal.App.4th at 1059. That is

20    lacking here.

21    4.    **EVEN ASSUMING THAT A DEFENSE DUTY INITIALLY EXISTED, THAT**

22    **DUTY ENDED WHEN THE ENGEBRETSENS RELEASED ANY CLAIMS**

23    **ARISING OUT OF APEX PLUMBING'S WORK**

24    The duty to defend does not necessarily continue through conclusion of third-party

25    lawsuit. It can terminate when the insurer can show that there is no potential for coverage.

26    *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295; *Hartford Accident &*

27    *Indemnity Co. v. Superior Court* (1994) 23 Cal.App.4th 1774, 1779, 29 Cal.Rptr.2d 32.

28    After the *Engebretsen* action had been pending for more than a year, the Davises tendered

S72:99\BRIEFS\TRDF01                                    4

1    their defense of that suit to Safeco under the Apex Plumbing policy on October 10, 2002. Even

2    assuming a defense duty arose at that point, that duty ended on August 25, 2003. On that date,

3    the Engebretsens "specifically releas[ed] all claims from the suit arising out of the scope of work

4    of Apex Plumbing." The settlement with Apex was determined to be in good faith by the

5    Superior Court Judge.

6           That release terminated any duty to defend the Davises that otherwise existed because it

7    foreclosed the possibility that they could be vicariously liable for Apex Plumbing's actions.

8    Additional insured provisions "'are intended to protect parties who are not named insureds from

9    exposure to vicarious liability for acts of the named insured.'" *Maryland Cas. Co. v. Nationwide*

10   *Ins. Co.* (1998) 65 Cal.App.4th 21, 31, 76 Cal.Rptr.2d 113 (quoting *Harbor Ins. Co. v. Lewis*

11   (E.D.Pa. 1983) 562 F.Supp. 800, 803). As such, the insurer's indemnity obligation is limited to

12   cases where the additional insured is held vicariously liable for work performed by the named

13   insured. *Presley Homes, Inc. v. American States Ins. Co.* (2001) 90 Cal.App.4th 571, 575, 108

14   Cal.Rptr.2d 686. The Engebretsens' release eliminated any potential for coverage under the

15   policy, ending any duty to defend that may have otherwise existed.

16   5.    <u>**FEES AND COSTS INCURRED AFTER THE ENGEBRETSEN/APEX**</u>

17         <u>**PLUMBING SETTLEMENT ARE NOT RECOVERABLE**</u>

18         Safeco's "additional insured" endorsement to the Davises as DECA Homes issued on

19   form CG 20 10 10 93. That form provides:

20         WHO IS AN INSURED (SECTION II) is amended to include as an insured the

21         person or organization shown in the Schedule, but only with respect to liability

22         arising out of your ongoing operations performed for that insured.

23         Such endorsements limit liability coverage to the additional insured to the extent that it is

24   found vicariously liable for the acts and omissions of the named insured. *Presley Homes, Inc. v.*

25   *American States Ins. Co., supra,* 90 Cal.App.4th at 575.

26         On August 25, 2003, the Engebretsens settled the *Engebretsen* lawsuit with Apex

27   Plumbing, which they had added as a defendant. That settlement agreement contains an issue

28   release: "Plaintiffs further agree that in addition to the general release cited herein, they are

S72898\BRIEFS\TRBF01

5

1  specifically releasing all claims from the suit arising out of the scope of work of Apex

2  Plumbing." Because the Safeco policy only provided indemnity to the Davises to the extent of

3  their vicarious liability for Apex Plumbing's work, the issue release extinguished any potential

4  for coverage that the Davises' had under the Safeco policy.

5            "[T]he carrier must defend a suit which potentially seeks damages within the coverage of

6  the policy." *Gray v. Zurich Insurance Co.*, (1966) 65 Cal.2d 263, 275. A defense is excused

7  where "the third party complaint can by no conceivable theory raise a single issue which could

8  bring it within the policy coverage." *Montrose Chemical Corp. v. Superior Court, supra,*

9  6 Cal.4th at 295. Subsequent to the issue release in the Apex Plumbing settlement agreement,

10  there was potential for coverage for the Davises under the Safeco policy.

11            Assuming, arguendo, that Safeco had a duty to defend the Davises in the *Engebretsen*

12  lawsuit at the time of tender, that duty to defend ceased to exist after August 25, 2003. Although

13  the duty to defend is broad, it is not unlimited and can be terminated:

14            Even though an insurer must defend unless and until it can demonstrate that there
            is no potential for coverage, this rule obviously leaves open the possibility that the
15            insurer may reject a tender of defense or withdraw from defending a claim once it
            is able to demonstrate, by reference to undisputed facts, that the claim cannot be
16            covered.

17  *Ringler Assoc. Inc. v. Maryland Cas. Co.* (2000) 80 Cal.App.4th 1165, 1186. That is the case

18  here. No defense was owed after the Apex Plumbing settlement because the Engebretsens'

19  claims against the Davises, insofar as they could be covered under the Safeco policy, were

20  released.

21            Because there could not be any duty by Safeco to defend the Davises after August 25,

22  2003, the Davises cannot recover for fees and costs incurred beyond that date. Those defense

23  expenditures should be excluded.

24  6.    **SAFECO HAD NO DUTY TO INDEMNIFY THE DAVISES FOR THE**

25        **JUDGMENT AGAINST THEM IN THE ENGEBRETSEN ACTION**

26            As shown above, any duty to defend the Davises in the *Engebretsen* action ended on

27  August 25, 2003. The lack of a defense duty negates any duty to indemnify because the duty to

28  defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B., supra,*

1    4 Cal.4th at 1080. If there is no duty to defend, there can be no duty to indemnify. *Certain*

2    *Underwriters at Lloyd's v. Superior Court* (2001) 24 Cal.4th 945, 961, 103 Cal.Rptr.2d 672.

3    Safeco is therefore not responsible for the judgment against the Davises.

4            Even if Safeco had a duty to defend the Davises through the conclusion of *Engebretsen*

5    action, it still would not be responsible for the judgment against them. The Engebretsens' claims

6    against the Davises were tried to Merv Thompson, Esq. by judicial reference. In finding for the

7    Engebretsens, Mr. Thompson in his memorandum of decision identified no plumbing-related

8    damages or problems with work performed by Apex Plumbing. In fact, there was no evidence of

9    plumbing related damages presented at trial. Rather, he found that the problems with the Calle

10   Margarita residence primarily related to inadequate grading, drainage, ventilation and

11   waterproofing which permitted water to collect under the house causing damage. In short, the

12   Davises were not found to be vicariously liable for work done by Apex Plumbing. Such a

13   finding would be required for an indemnity obligation to attach. *Presley Homes, Inc. v.*

14   *American States Ins. Co., supra*, 90 Cal.App.4th at 575.

15   7.      **PLAINTIFFS' INDEMNITY CLAIM IS LIMITED TO $250,000**

16           As noted above, the Davises settled with the Engebretsens for $250,000. As a result, they

17   cannot recover the full amount of the judgment against them, their indemnity claim is capped.

18   8.      **PLAINTIFFS' BAD FAITH CLAIM HAS NO MERIT**

19           Plaintiffs contend that Safeco's claims handling was in breach of the covenant of good

20   faith and fair dealing. "It is clear that if there is no potential for coverage . . . there can be no

21   action for breach of the implied covenant of good faith and fair dealing because the covenant is

22   based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins.*

23   *Exchange, Inc.* (1995) 11 Cal.4th 1, 36; *accord Love v. Fire Ins. Exchange* (1990)

24   221 Cal.App.3d 1136, 1151-1153 (unless policy benefits were due and unreasonably withheld,

25   the insured cannot pursue a bad faith cause of action). "[A] bad faith claim cannot be maintained

26   unless policy benefits are due is in accord with the policy in which the duty of good faith is

27   firmly rooted." *Love v. Fire Ins. Exchange, supra*, 221 Cal.App.3d 1136; see also *McMillin*

28   *Scripps North Partnership v. Royal Ins. Co.* (1993) 19 Cal.App.4th 1215, 1222. Safeco disagrees

S7285\BRIEFS\TRBF01                                    7

TRIAL BRIEF

1    with the court's interim ruling, and continues to maintain that the Apex Plumbing policy

2    provided the Davises with neither a defense nor indemnity for the Engebretsen lawsuit.

3    However, assuming *arguendo*, that the defense fees and costs that have been paid were indeed

4    owed, plaintiffs cannot show that they were unreasonably withheld. In fact, the complete bills

5    which plaintiffs contend had not been paid were only sent to Safeco near the close of discovery.

6    Once received, they were reviewed for reasonableness, and to make sure that the fees and costs

7    related to the defense of the lawsuit. The fees and costs related to defense were then paid. Fees

8    and costs related to the Davises' tender of defense and this lawsuit were not paid. The Davises'

9    bad faith claim has no merit.

10   9.     **THERE IS NO CONDUCT SUPPORTING A CLAIM FOR BAD FAITH**

11          A.     The Genuine Dispute Doctrine

12                 An insurer's good faith belief in its position constitutes a defense to a bad faith claim,

13   providing that its position is not unreasonable. [*Congleton v. National Union Fire Ins. Co.* 189

14   Cal.App.3d 51, 59-60 (1987) [234 Cal.Rptr. 218, 222-223].] In short, an insurance company

15   cannot be held liable for bad faith if there is a "genuine dispute" concerning coverage or the

16   amount of the insured's covered claim:

17                 It is now settled law in California that an insurer denying or delaying the payment

18                 of policy benefits due to the existence of a genuine dispute with its insured as to

19                 the existence of coverage, liability or the amount of the insured's covered claim is

20                 not liable in bad faith even though it might be liable for breach of contract.

21   [*Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.* 90 Cal.App.4th

22   335, 347 [108 Cal.Rptr.2d 776, 784.] See also *Dalrymple v. United Services Auto Assn.*, (1995)

23   40 Cal.App.4th 497.] Breach of the covenant of good faith and fair dealing requires something

24   more than negligence; the insurer must have acted unreasonably. *Shade Foods v. Inc. v.*

25   *Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 879-880 [93 Cal.Rptr.2d

26   364].

27                 The so-called "genuine dispute doctrine" eliminates liability for bad faith because it

28   eliminates the necessary "without proper cause" element:

S72XF\BRIEFS\TRBF01                                   8

04-25-06   02:07pm   From-Dempler Armstrong   562 494 3858   T-675   P.013/018   F-812

1    Thus, before an insurer can be found to have acted tortiously (i.e., in bad faith),

2    forced delay or denial in the payment of policy benefits, it must be shown that the

3    insurer acted *unreasonably* or *without proper cause*. However, where there is a

4    *genuine issue* as to the insurer's liability under the policy for the claim asserted by

5    the insured, there can be no bad faith liability imposed on the insurer for

6    advancing its side of that dispute. While an insurer must give as much

7    consideration to the interests of its insured as it does to its own, it is not required

8    to disregard the interests of its shareholders and other policyholders when

9    evaluating claims . . . In other words, an insurer *is* entitled to give its own interest

10   consideration when evaluating the merits of an insured's claim. (Italics in

11   original.) (Citations omitted.)

12   *[Chateau, supra, at 347.]*

13   Plaintiff has the burden of proving that benefits were withheld without proper cause.

14   *Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4[th] 1282, 1292 [97 Cal.Rptr.2d 386, 391]. At

15   footnote 7 of the *Chateau Chamberay* decision, the court elaborated on the standard to be applied

16   in determining a "genuine" issue. For example, a coverage dispute involving the proper

17   construction and application of policy language would be a *legal dispute*, while one involving a

18   disagreement as to the reasonable value of an insured's claim would be a *factual* one. Provided

19   there is no dispute as to the *underlying facts* (e.g., what the parties did and said), then the trial

20   court can determine, as *a matter of law* whether such dispute is "genuine." In making that

21   decision, the court does not decide which party is "right" as to the disputed matter, but only that a

22   reasonable and legitimate dispute actually existed. (See also *Feldman v. Allstate Ins. Co.* (9th

23   Cir. 2003) 322 F.3d 660,) ["A genuine dispute may concern either a reasonable factual dispute or

24   an unsettled area of insurance law", citing *Fraley, supra* at 1293.]

25   The issue of "genuine dispute" may be resolved as a matter of law:

26   It is equally clear that this issue may be resolved as a matter of law in a proper

27   case. [A] court can conclude as a matter of law that an insurer's denial of a claim

28   is not unreasonable, so long as there existed a genuine issue as to the insurer's

S728\BRIEFS\TRIDPO1                                      9

Z18-J    810/710 d    SZ9-1    8S8E 787 Z9S    Buoi1smiy Je|meg-moij    wd80:Z0    90-SZ-70

1  liability. [Citation.] The 'genuine dispute' doctrine may be applied where the

2  insurer denies a claim based on the opinions of experts. [Citations.] (*Fraley v.*

3  *Allstate Ins. Co., supra,* 81 Cal.App.4th at 1292)...

4  [*Chateau Chamberay*, at 342.]

5  The genuine dispute doctrine does not require a court to determine whether an insurance

6  company's "adjustment process was correct" and instead requires only a determination of whether

7  "in light of the record as a whole [the insurer's] position with respect to the disputed points was

8  reasonable or that [the insurer] had proper cause to assert the positions that it did." [*Chateau,*

9  *supra,* at 350.] As noted in *Phelps v. Provident Life and Acc. Ins. Co.* (C.D. Cal. 1999) 60

10  F.Supp.2d 1014, 1022 , an insurer cannot be liable for bad faith if "there existed a genuine issue

11  as to the insurer's liability."

12  B.    Specific Facts of Genuine Dispute

13  Here, as in *Chateau Chamberay, Phelps* and *Fraley,* there was (and still remains) a

14  reasonable basis behind the decisions made by Safeco during adjustment of the loss. Safeco

15  responded in a timely manner, investigated and entered into a settlement which it believed in

16  good faith to be in the interests of the Davises. Safeco in good faith believed that it had neither a

17  duty to defend nor a duty to indemnify the Davises. As a matter of law, Safeco's conduct was

18  reasonable.

19  10.   **DAMAGES SOUGHT BY PLAINTIFFS**

20  The Davises have also identified some other damages that they seek to recover against

21  Safeco.

22  A.    Student Loans

23  For example, plaintiffs claim that Safeco should pay for student loans (totaling $34,600)

24  borrowed to finance the Davises' daughters' college education. They contend that they initially

25  planned to use the equity in the house to pay for this, and because (as they claim) they had to sell

26  that house to pay for the judgment, they had to make alternative arrangements. However, this is

27  not a recoverable damage for several reasons. First, the student loan records show that the

28  daughters borrowed the money, with Mrs. Davis co-signing. Second, this expense is entirely

S7284\BRIEFS\TRBF01

10

218-F    018/015.P   575-T         562 484 3858              From-Dembler Armstrong    02:08pm    04-25-06

1  unrelated to the claims by the Engebretsens. Assuming that the Davises could show some causal

2  connection, which they have not, the only amount they might be able to recover is the difference

3  in the interest rate between the home equity loan and the student loan. They may very well have

4  saved money by taking out the student loans, or having their children do so. This element of

5  damages is speculative.

6       B.    *Brandt* Fees

7       Plaintiffs have also identified fees and costs they claim under *Brandt v. Superior Court*

8  (1985) 37 Cal.3d 813, which would be limited to the fees and costs incurred to obtain policy

9  benefits, and only if they can show that Safeco unreasonably withheld such fees and costs.

10  However, to date, they have not produced a retainer agreement or any fee and cost bills for their

11  attorney Mr. Saur. (Plaintiffs produced a retainer agreement referencing another lawsuit, not this

12  one.) As a result, there is no obligation to pay for any such claim.

13       C.    Money Borrowed To Purchase New Property

14       They claim to have borrowed $63,500 from Dr. Janathin Miller to assist in the purchase

15  of their new home, and that she took a 50% interest in the house (a property worth over

16  $500,000) with the Davises making the whole mortgage payments. It appears that they probably

17  could have obtained better terms elsewhere.

18       D.    Alleged Inadequate Defense of the *Engebretsen* action

19       The Davises claim that their lawyers in the *Engrebretsen* action were not able to present

20  the defense necessary because there was no money for experts. The truth is that experts were

21  retained and designated, and there has been no showing that if the lawyers had had additional

22  money, the result would have been any different. The Davises have not designated any experts

23  on that issue, either.

24       E.    Miscellaneous Costs

25       There are assorted other damages that are claimed, such as closing/moving/storage costs

26  associated with the sale of their house when they downsized, $1,600 in expert costs (although

27  they have claimed that they had no experts), and the costs associated with reaching a settlement.

28  Safeco contends that the sale of the home was not the result of any wrongdoing by Safeco, and

1    these are expenses for which Safeco is not responsible.

2        F.     Emotional Distress

3        The emotional distress damages have been difficult to pin down, because the Davises

4 initially attributed most of these damages to their claim against Farmers, and now that Farmers

5 has prevailed in the trial court, they attribute all of them to Safeco. Furthermore, they have

6 acknowledged that some of these damages might be simply the result of their kids moving away

7 to college. Mr. Davis claims to be depressed, but has not sought any treatment or counseling.

8 The Davises claim to have had sexual dysfunction, but again have not sought treatment.

9 Assuming they can attribute this to Safeco's handling of their claim, they have not mitigated their

10 damages.

11

12    Dated: April 25, 2006            DEMLER, ARMSTRONG & ROWLAND, LLP

13

14

RAYMOND H. GOETTSCH
ANDRES C. HURWITZ
Attorneys for defendant
Safeco Insurance Company of America, a Washington
corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F-912    810/L10.P    SL9-T       8S8E t6t Z9S       From-Demler Armstrong    wd80:Z0    90-SZ-t0

# PROOF OF SERVICE
## (Code Civ. Proc., § 1013a(3) Revised 5-1-88)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 4500 East Pacific Coast Highway, Fourth Floor, Long Beach, California, 90804-3298.

On **April 25, 2006**, I served the foregoing document described as **DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA'S TRIAL BRIEF** on the interested parties in this action:

[X]   by placing the original/true copies thereof enclosed in sealed envelopes addressed as follows:

John K. Saur                          **Attorneys for Plaintiff**
24411 Ridge Route Dr., Suite 215      Tel:  (949) 768-2900
Laguna Hills, CA  92653-1698          Fax:  (949) 768-0180

[X]   BY MAIL: I deposited such envelope in the mail at Long Beach, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, said correspondence is deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Long Beach, California in the ordinary course of business; and there is delivery service by United States mail at the place so addressed.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. Executed on **April 25, 2006**, at Long Beach, California.

[ ]   BY FACSIMILE TRANSMISSION: See attached Proof of Transmission by Fax. The telephone number on the facsimile machine I used is (562) 494-3958. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2009, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

[X]   (Federal): I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Katherine Grant

S72UJVASC\POS